Sheed, J.,
delivered the opinion of the Court.
The bill is filed by Stephen C. Cope as the friend of "Washington Perkins, a minor, to hold the defendants, as Justices of the county of Warren, and members of the Quorum Court of that county, personally liable for the sum of three hundred and eleven dollars and interest, paid into the hands of the Clerk of said Court, in Confederate money, by Thomas Webb, administrator of the estate of John P. Perkins, deceased, father of the said Washington.
The bill is filed for other purposes, also, and against divers other defendants; but it was demurred to by the de *198 fendants Eamsey and Greeny and the question before us is, whether or not the Court below erred in allowing the demurrer and dismissing the bill as to the two said defendants. At the November Term, 1862, of said Court, the Clerk presented his report of the settlement with the said Thomas Webb, administrator, • and Mary E. Perkins, administratrix, of the estate of the said John P. Perkins, deceased, of their administration, which was in all things confirmed. From the decree of confirmation we extract the concluding paragraph, in the words following: “And it further appeared to the Court that said administrators had made a final settlement and had collected all that was due said estate, in Confederate funds, and said administrators asked permission to pay over said funds in their hands to the Clerk of the County Court; it is therefore ordered by the Court that said administrators pay over said funds to the Clerk as aforesaid, and take his receipt for the same. It is further ordered by the Court ■ that the clerk is not liable for any interest on said funds, ex-? cept he can loan the same; and it is further ordered, that in the event said Confederate funds should become depreciated, it is ordered by the Court that said clerk is not in any way liable for the same.”
The defendants, William Eamsey and Elias Green, were of the Quorum Court, and were presiding at the time of the rendition of said decree. The bill charges that all the parties defendant combined and confederated together to cheat and defraud said minor in this and the various other transactions complained of. There is no proof that tends to throw suspicion on these two defendants. They answer and repel the charges against them, and assert *199 that they had no other motive in making said order than to do what seemed, upon their best judgment, to be their duty as a Court.
A demurrer is incorporated in the answer, assigning as causes of demurrer:
“1. That it appears from the charges made against the defendants, that the acts complained of, and for which it is attempted to hold them responsible, were done by respondent in a judicial capacity as the Quorum Court of the county of Warren.
“2. It is nowhere charged in said bill that respondents, in their judicial capacity, acted fraudulently or maliciously towards Washington Perkins; nor is there any charge, matter or thing stated in said bill upon which to ground a prayer for relief against them.
“3. The bill shows that James Cope is the regular guardian of Washington Perkins. It may be stated that the bill charges some of the other parties defendant with certain alleged fraudulent transactions, with specifications thereof, and concludes with the general sweeping charge that all the defendants combined and confederated together to cheat and defraud the said' Washington; but it does not connect these defendants with said transactions, and only complains of them in regard _to their action as a Court, which the bill does not charge to have been corrupt, malicious, or for any fraudulent or dishonest purpose.”
It is a familiar principle of the common law, that, while acting within the sphere of his jurisdiction, a judge is not to be held responsible for any errors of judgment or mistake he may commit as judge. Coke Litt., 294; 5 Johns, 282. The statement of the prin *200 ciple in the ancient authorities, that the judge is thus exculpated while “acting within the bounds of his jurisdiction,” would seem to import his personal accountability for an error committed upon an honest mistake of jurisdiction. This can not be the intention of the law. Juclgé Green states the principle more guardedly, that a judicial officer is not responsible for mere errors of judgment in a case of which he has jurisdiction, and in which, without malice, he honestly pronounces what he believes to be the judgment of the law. Hoggatt v. Bigley, 6 Hum., 239. We can conceive of many cases; and indeed they are of frequent occurrence, where a judicial officer pronounces an erroneous judgment from an 'honest sense of right, but upon a mistaken opinion of his jurisdiction of the person or the subject matter. The law has' provided the most ample remedies both for the prevention and correction of such errors. And we apprehend the true sense of the doctrine to be, that a judicial officer is personally responsible to the injured party only for the errors committed in the arbitrary, corrupt and malicious exercise of an assumed judicial authority, without regard to the question of his jurisdiction.
It is a general principle that an error or irregularity in a judicial proceeding can not be attacked collaterally in any other suit than that in which the irregularity occurs, or on appeal or process in error therefrom. Cooley’s Con. Lim., 409. The exception to this rule embraces the vast number of cases in which the jurisdiction is conferred upon a court of equity to correct and annul the judgments of a court of Taw upon grounds peculiarly cognizable in a court of equity. Among them is *201 the corrupt, fraudulent and malicious exercise of judicial power, whether the corrupt motives are patent at the moment of such judicial action or come to light after-wards. If it be a simple error of an honest judgment, then the remedy is in a court for the correction of errors; but if it be an error fraudulent, corrupt, malicious and injurious, then the proper forum is the court of equity, with its ample remedial powers, not only to check the wrong, but to vindicate and secure the right.
The defendants were of the Justices of the County of Warren, who constitute a judicial tribunal known to our law as the Quorum County Court, in which was vested by law the original and exclusive jurisdiction of matters of administration and the settlement of the accounts thereof. If, in the rendition of the order complained of, they have done the complainants wrong by an honest error of judgment, they are not responsible for it, pecuniarily or otherwise. But if they have acted corruptly, maliciously and with purpose to defraud the complainant of his rights, then, in an appropriate proceeding, they are responsible. The bill does not make out such a case. It does not impute to these Justices any corrupt or dishonest motive touching this judicial act, and it is therefore demurrable.
The decree of the Chancellor is affirmed, and the bill as to these defendants will be dismissed.